IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ANTHONY LEE MEANS,

      Petitioner,

v.                                CASE NO. 1:14-cv-230-WTH-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his November 2011 jury-trial conviction and 15-year sentence for burglary of a dwelling and grand theft. ECF No. 1. Petitioner is proceeding pursuant to an amended petition, ECF No. 12 (hereafter "Petition"). The Respondent filed a response with relevant portions of the state record, ECF No. 17, and Petitioner filed a reply, ECF No. 19. Upon due consideration of the Petition, the response, the state-court record, and the reply, the undersigned recommends that the Petition be denied.[1]

_____

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

# I.  <u>State-Court Proceedings</u>

The procedural history of this case is summarized in the Response, and Petitioner does not dispute the accuracy of that summary.  *See* ECF No. 17, ECF No. 19.  Petitioner's conviction was affirmed *per curiam* without written opinion.  *Means v. State*, 96 So.3d 889 (Fla. 1ˢᵗ DCA 2012). On May 6, 2013, Petitioner file a *pro se* postconviction motion pursuant to Fla. R. Crim. P. 3.850.  ECF No. 17 Exh. J.  The trial court summarily denied relief.  *Id*. at 158-62 (ECF No. 17-3 at 362-66).  The First DCA affirmed *per curiam* without written opinion on October 6, 2014.  *Id*. Exh. N; *Means v. State*, 150 So.3d 1139 (Fla. 1ˢᵗ DCA 2014).

The instant petition, which Respondent concedes is timely, followed. Petitioner asserts three grounds for relief: (1) the circumstantial evidence was insufficient to find him guilty and therefore the trial court erred in denying his motion for judgment of acquittal; (2) the trial court erred by giving a jury instruction on "principals" when there was no direct evidence linking Petitioner to his co-defendant's crimes; and (3) Petitioner's trial counsel was ineffective for failing to inform the court of his mental health issues and to request a competency hearing.  ECF No. 12.  The Respondent argues that Petitioner's first two claims were not properly exhausted in state court and are foreclosed from federal review, and that

his third claim should be denied on the merits.  ECF No. 17.

## II.  <u>Section 2254 Exhaustion Requirement</u>

Before bringing a habeas action in federal court, a petitioner must

exhaust all state court remedies that are available for challenging his

conviction, either on direct appeal or in a state post-conviction motion.  28

U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state

courts a "full and fair opportunity" to resolve all federal constitutional claims

by "invoking one complete round of the State's established appellate

review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To

properly exhaust a federal claim, a petitioner must "fairly present" the claim

in each appropriate state court, thereby affording the state courts a

meaningful opportunity to "pass upon and correct alleged violations of its

prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)

(quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state

court, and it is obvious that the unexhausted claim would now be

procedurally barred under state law, the claim is procedurally defaulted.

*Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas

courts are precluded from reviewing the merits of procedurally

defaulted claims unless the petitioner can show either (1) cause for the

failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id.* at 1302, 1306. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### III.  Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." "'[A] state-court factual determination is not unreasonable

merely because the federal habeas court would have reached a different

conclusion in the first instance.'" *Burt v. Titlow*, ___ *U.S.* ___, 134 S.Ct.

10, 15 (2013)(quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct.

841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief

only if the state court's adjudication of the merits of the federal claim

"resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the

Supreme Court of the United States." § 2254(d)(1); *see Burt*, 134 S.Ct. at

15 (standard for reviewing claims of legal error by state courts is "highly

deferential").   This standard "recognizes a foundational principle of our

federal system: State courts are adequate forums for the vindication of

federal rights." *Id*.   This highly deferential standard carries special force in

habeas cases asserting ineffective assistance claims: "Especially where a

case involves such a common claim as ineffective assistance of counsel

under *Strickland*[2]—a claim state courts have now adjudicated in countless

---

[2]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Id*. at 15-16 (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011).  "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. at 16 (quoting *Harrington*, 131 S.Ct. at 786).  "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy."  *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

## IV.  Discussion

### A.  *Sufficiency of the Evidence*

Petitioner argues that the trial court erred in denying his motion for

judgment of acquittal because although he was charged as a principal the State's evidence was wholly circumstantial and insufficient to find him guilty of the charged offenses.  ECF No. 12.

Respondent contends that this claim was not exhausted as a federal claim in state court.  ECF No. 17.  At trial, Petitioner's counsel moved for a JOA at the close of the State's case, when both the State and the defense rested, arguing that the State's evidence was circumstantial and did not directly link Petitioner to the crimes.  ECF No. 17-2 at 16-23, 63.  The court found that the evidence was sufficient to establish a prima facie case and denied the motion.  *Id.*  The defense rested without putting on any evidence.  Counsel did not phrase the JOA motion in terms of a violation of federal constitutional law.  *Id*.  Petitioner was convicted as charged.  ECF No. 17-1 at 99-100.[3]

On direct appeal, the only issue raised was whether the evidence was sufficient to convict Petitioner.  ECF No. 17-3 at 126-44.  Petitioner's appellate counsel cited only state-law cases and made no argument that Petitioner's conviction amounted to a violation of federal constitutional law due to the circumstantial nature of the evidence.  *Id*.

---

[3]Petitioner was also convicted of a third misdemeanor charge of criminal mischief, but the court entered a JNOV as to that charge.  ECF No. 17-1 at 104.

As Respondent argues, this claim is unexhausted for federal habeas corpus purposes because it was never raised as a federal constitutional issue in state court.  As noted, to properly exhaust a federal claim, a petitioner must "fairly present" his federal claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' *federal* rights." *Baldwin*, 541 U.S. at 29 (emphasis added).   A petitioner must "do more than scatter some makeshift needles in the haystack of the state court record"; a reasonable reader should be able to understand the factual and legal bases for the federal claim.  *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005) (quotations and citations omitted).  A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim 'federal.' " *Baldwin*, 541 U.S. at 32.

Because Petitioner failed to assert this claim as a federal constitutional claim in state court, it is unexhausted and procedurally defaulted.  Petitioner makes no showing of cause and prejudice sufficient to overcome the procedural default, nor would the record support a conclusion that his conviction amounts to a fundamental miscarriage of

justice.

Even if Petitioner had exhausted this claim as a federal claim, on this record the claim must be denied on the merits.[4]  When reviewing a claim of the sufficiency of the evidence on federal habeas review, this Court is required to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  As the Eleventh Circuit has explained:

> Faced with a record of historical facts that supports conflicting inferences, we must presume that the jury resolved such conflicts in favor of the prosecution, and we defer to the jury's judgment as to the weight and credibility of the evidence. *See Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir.1987). The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief. *Id*.

*Conklin v. Schofield*, 366 F.3d 1191 (11th Cir. 2004); *see Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985)("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence[.]").  "In determining whether the facts of a particular case satisfy the *Jackson* standard, it is necessary to refer to the essential elements of the crimes as defined by

_____

[4] Pursuant to 28 U.S.C. § 2254(b)(2), a habeas petition may be denied on the merits notwithstanding Petitioner's failure to exhaust.

state law." *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987) (citations omitted).

Petitioner's argument that the evidence was insufficient because it was circumstantial provides no basis for federal habeas corpus relief. The Supreme Court has held that under federal constitutional law circumstantial and direct evidence is treated the same, and "'[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence.'" *Desert Palace Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 508 n. 17 (1957)). In the context of a criminal conviction, the Court has stated "we have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required." *Desert Palace*, 539 U.S. at 100 (citing *Holland v. United States*, 348 U.S. 121, 140 (1954) (circumstantial evidence is "intrinsically no different from testimonial evidence")).

The State's first witness was Justin Pritt, a resident of Arbor Park Apartments in Gainesville. Pritt testified that on the night of the crimes he was standing on his patio when he observed two black males wearing dark clothing run from the front of one building and behind another. Pritt heard a car peel away. Pritt called the police. A GPD officer responded. After

speaking with Pritt, the officer circled the block in his car, and then got out.

Pritt saw an individual in dark clothing take off running. Pritt yelled at the

man to stop, but he hopped over a fence where a woman was standing on

the other side.  ECF No. 17-1 at 392-414.

Officer Steven Sweeting testified that he responded to Pritt's call.  He

was working in plainclothes and driving an unmarked police car.  During his

investigation, he saw two men walk out from the front of a building.  They

generally fit the description provided by Pritt.  One of the suspects was

wearing a black flat-billed baseball cap.  The officer tried to engage the

men from 20 to 30 feet away by saying he needed to speak to them.  The

street lighting was sufficient for Sweeting to see both men clearly.

Sweeting identified Petitioner in court as the man wearing the ball cap.

While the men initially stopped when Sweeting pulled up, they ran away

when he tried to speak with them.  The second man had a backpack and

was wearing a yellow jacket or shirt.  Sweeting produced his badge, yelled

"stop, police," and chased the men until he lost sight of them.  Sweeting

passed a woman who was yelling "somebody call the police."

Sweeting then found the backpack, which contained video game

consoles, cables, and a laptop computer.  GPD Officer Holt arrived and

attempted to track the men with a K-9.  The officers recovered the hat worn

by Petitioner in the Polos Apartments complex.  In the meantime, GPD

Officer Ratliff identified the burglary location.  GPD Officer Brown

participated in the chase and apprehended a suspect, later identified as

Tyrese Kirksy.  After both suspects were apprehended and Petitioner was

being booked at the jail, Sweeting identified a picture of Petitioner on a cell

phone that had been recovered by Officer Ratliff.  Sweeting identified the

backpack that was found as the same one carried by Kirksy.  ECF No. 17-

1 at 414-47.

Dameko Stewart testified that she was a resident at Arbor

Apartments.  On the night of the burglary, she was sitting in her car in front

of her apartment because another car, later identified as a tan Buick, was

in her parking place, backed all the way up into some bushes.  Stewart

saw an individual walking past her car, and when she attempted to speak

to him he ran.  The man was carrying an unzipped backpack with wires

sticking out of it.  The police arrived within a few minutes.  Stewart later

was taken to a "show up" where she identified the man with the backpack.

Stewart did not see any other individuals.  ECF No. 17-1 at 483-94.

GPD Officer Marquita Brown testified that she responded to Arbor

Apartments in a marked patrol car.  She saw Officer Sweeting in pursuit of

the suspects and assisted in the pursuit.  When they got to Gator Place

Apartments, Brown saw a black male gasping for air and breathing hard.

Brown detained him.  The man was identified as Tyrese Kirksy.  Brown

participated in a show-up with Kirksy, but did not see any other suspects.

Brown also conducted a walk-through of the burglary victim's apartment.  It

appeared that the door had been pried a little, but then kicked in the rest of

the way.  ECF No. 17-1 at 495-508.

GPD Officer Edward Ratliff, who is also a resident of the Arbor

Apartments and serves as its courtesy officer, testified that he assisted

Sweeting in locating the apartment that had been burglarized.  They found

an apartment with the door off of the frame.  The apartment had been

ransacked, but no one was home.  Officer Ratliff also spoke with Dameko

Stewart.  Ratliff observed the tan Buick in Stewart's parking spot, and it

was the first time he had seen the car in the complex.  After accompanying

Stewart to the show-up, where she immediately identified Kirksy, Ratliff

returned to the Buick which was open.  Ratliff found a silver cell phone.

Ratliff had provided the car's tag information to other officers, who traveled

to the owner's residence.  After the officers left the Buick owner's home,

the cell phone began to ring.  The "wallpaper" of the cell phone had a

photo that Sweeting identified as the suspect who ran from him

(Petitioner).

Ratliff had the Buick towed from the scene, and then drove around the complex. The temperature that night was very cold, and Ratliff observed Petitioner walking down the street without a jacket. He took Petitioner into custody and searched him. Petitioner had a set of Buick car keys, but denied having a car in the area. Petitioner told Ratliff that the Buick belonged to his cousin Tashieka Holmes, whom police had already identified as the registered owner. Petitioner told Ratliff that he drove the car to the Arbors with some friends, but left the area when he saw the police. Petitioner denied running from Sweeting. Ratliff transported him to the Alachua County Jail. Sweeting identified Petitioner at the jail as the person who ran from him. ECF No. 17-1 at 546-82.

Jacqueline Pitman Thomas testified that she was the resident of the apartment that was burglarized. She and her fiancé were out with a friend who was getting a tattoo. Thomas returned to the apartment to get her laptop to retrieve a picture, realized she had left the apartment unlocked, and locked it before leaving again. Later that night, she received a call from GPD. Her front door had been broken and the apartment ransacked. A laptop that had been on a desk was gone and returned later that night by the GPD. Two videogame systems were also missing and returned by the GPD after being found in Nicholas Thomas's backpack. Jewelry was

missing that was never recovered.  A TV that was mounted to a wall had been detached, and another TV was moved.  Nicholas Thomas corroborated this testimony regarding the condition of the apartment and the stolen items.  ECF No. 17-1 at 584-604.

Tashieka Holmes testified that Petitioner is a good friend.  At the time of trial, Holmes was serving a sentence in the county jail for failing to appear at a previously-scheduled trial date.  Holmes testified that she was ill on the night of the burglary.  Petitioner came to her home and offered to get medicine for her.  She gave Petitioner her car keys but did not give him permission to use the car for any other purpose.  Holmes fell asleep and was awakened when the police came to her door.  Holmes told the police that her brother "Amp" had the car.  Holmes testified that she did not know Petitioner's last name at the time.  After the police left, Holmes called Petitioner's cell phone.  The police then returned to Holmes' apartment. ECF No. 17-1 at 607-19.

GPD K-9 Officer Holt testified that he responded to Sweeting's call for assistance.  The K-9, Rua, tracked in the direction of the Polos Apartments and found the black cap.  A yellow long-sleeved shirt was also found.  Rua tracked one suspect, later identified as Kirksy, after the two suspects apparently split up.  ECF No. 17-1 at 636-46.

GPD Detective Farrah Lorimil testified that she identified Takiesha Holmes as the owner of the tan Buick, and accompanied other officers to Holmes' apartment.  Holmes was very upset.  After speaking with Holmes, the officers stepped away from her door but did not leave the area.  Lorimil then received a phone number from Officer Ratliff (the number that had been obtained from the phone found in the tan Buick).  Lorimil called the number, returned to Holmes' door, and when Holmes answered the door Lorimil could hear her phone ringing.  Holmes again was very angry.  After the conversation with Holmes, Lorimil received information from Ratliff about the possible identity of one of the suspects.  Lorimil identified the cell phone recovered from the Buick by Ratliff, which she had previously examined.  Petitioner's picture was on the phone.

Lorimil questioned Petitioner following his arrest.  Petitioner told Lorimil that he had borrowed the Buick from his sister and gave a person named "Snow" a ride to Arbor Apartments.  Petitioner could not provide additional information about "Snow".  Petitioner told Lorimil that he thought he heard a door being kicked in.  He told Lorimil that he ran when he saw the police.  Lorimil believed that "Snow" was Kirksy because Petitioner said "Snow" was wearing neon-colored sneakers and that is what Kirksy was wearing.  Petitioner identified Kirksy in a photo lineup.  ECF No. 17-1 at

686 to ECF No. 17-2 at 13.

In addition to the testimony, the State's evidence included photographs of the crime scene and stolen property, the shirt, hat, and cell phone that were recovered, and fingerprint evidence. A GPD latent fingerprint examiner, Melissa Kilmer, testified that prints from a cell phone interior screen were identified as Kirksy's. Prints from the phone battery were identified as Petitioner's. Prints from the exterior driver's and back left doors of the Buick were identified as Petitioner's. ECF No. 17-1 at 521-31.

Viewing the evidence in the light most favorable to the prosecution, as this Court on habeas corpus review is required to do, it is clear that a rational trier of fact could have found beyond a reasonable doubt that Petitioner acted as a principal in committing the charged offenses. In his direct appeal, Petitioner argued that the State's circumstantial evidence failed to rebut his reasonable hypothesis of innocence. At trial, the essential elements of the crimes of burglary and grand theft were explained to the jury. The trial court also instructed the jury that Petitioner could be guilty of the offenses as a principal under state law if he "helped another person or person commit or attempt to commit a crime," with a conscious intent that the criminal act be done, and the defendant did some act or said

some word which was intended to and did "incite, cause, encourage,

assist, or advise" the other person to actually commit the crime.  ECF No.

17-1 at 88; Fla. Stat. § 777.011 (2011).  Thus, under Florida law, to convict

under an aiding and abetting theory:

> the State must establish (1) that the defendant helped the
> person who actually committed the crime by doing or saying
> something that caused, encouraged, incited, or otherwise
> assisted that person to commit the crime; and (2) that the
> defendant intended to participate in the crime.

*Evans v. State*, 643 So. 2d 1204, 1205-06 (Fla. 1st DCA 1994): *E.G.*

*Howard v. State*, 473 So. 2d 841 (Fla. 1st DCA 1985).

As summarized above, the State presented evidence that Petitioner

was not merely present at the scene but fled when an apartment resident

and the police tried to engage him and Kirksy.  Sweeting identified himself

as a police officer to the suspects before giving chase.  Sweeting

unequivocally identified Petitioner as one of the suspects.  Moreover,

Petitioner's cell phone was found in the suspiciously parked Buick at the

Arbor Apartments, yet Petitioner initially denied to Ratliff that he had a car

in the area.  Petitioner was found by Ratliff while walking in the area

without a jacket in very cold temperatures, four hours after the burglary.

Petitioner later admitted to a detective that he had given "Snow" a ride to

the Arbor Apartments in his "sister's" car, and he identified "Snow" in a

lineup as Kirksy.  Petitioner told the detective that he ran from the scene after hearing a door being kicked in, and the State's witness testified that it appeared the door had been kicked in.  It is unreasonable to believe that Petitioner would have known a door was being kicked in merely from a sound rather than because he was present at the apartment and/or assisting in the break-in.  As the State argued in closing argument, only a brief amount of time passed between Pritt observing the suspects and the arrival of Officer Sweeting, and it was unreasonable to believe that one individual acting alone was able to kick in the door of the apartment and completely ransack it, including dismounting a television.  Lastly, Petitioner was walking with Kirksy, who was carrying the open backpack of stolen items, when first observed by Sweeting.  A rational trier of fact could conclude from this evidence that Petitioner was a principal in the first degree under Florida law by aiding and abetting Kirksy and having the requisite intent to participate in the burglary.  Petitioner has failed to show that state court's rejection of this sufficiency-of-the-evidence claim was contrary to, or an unreasonable application of, federal law.

## B.  Trial Court Error Regarding Instruction on "Principals"

Petitioner contends that the trial court erred by giving the Florida standard jury instruction on "principals" in the absence of direct evidence

linking Petitioner to Kirksy's crimes.  ECF No. 12.  Petitioner failed to raise

this issue on direct appeal.  He raised it in his postconviction motion, but

the state court determined that the claim was not cognizable because it

should have been raised on direct appeal.  ECF No. 17-3 at 365.  Because

Petitioner failed to raise this claim in his direct appeal, it is unexhausted

and procedurally defaulted for purposes of federal habeas corpus review.

Petitioner concedes that this issue was not raised on direct appeal,

but asserts that the procedural default should be excused pursuant to

*Martinez v. Ryan*, 566 U.S. 1 (2012).  In *Martinez*, the Supreme Court

considered whether ineffective assistance of counsel at an "initial-review

collateral proceeding on a claim of ineffective assistance at trial may

provide cause for a procedural default in a federal habeas proceeding."

*Martinez*, 132 S.Ct. 1315.  In appropriate circumstances, *Martinez* provides

prisoners cause for overcoming procedural default of an ineffective-

assistance claim so long as certain narrow conditions are met.  *See*

*Trevino v. Thaler*, ___ U.S. ___, 133 S.Ct. 1911, 1918 (2013) (to overcome

procedural default, petitioner must have substantial claim of ineffective

assistance of trial counsel; be unrepresented or represented by ineffective

counsel during state collateral review that is the initial review regarding that

claim; and state law requires that an ineffective assistance claim be raised

in an initial-review collateral proceeding).  *Martinez* and *Trevino* are

inapplicable to Petitioner's claim in this case because he is asserting a

claim of trial court error, not ineffective assistance of trial counsel.

Petitioner concedes that the "principals" instruction given by the

state court was the standard Florida jury instruction.  ECF No. 12 at 11-12.

Petitioner's argument in essence restates his sufficiency-of-the-evidence

argument—that the evidence was insufficient to find that he acted as a

principal because the State's case relied on circumstantial evidence.  *See*

*id.*   The Court has rejected that argument.  The record amply supports a

conclusion that the trial court did not err in instructing the jury on

"principals" under the facts of this case.  Thus, even if this claim were not

procedurally defaulted, the record presents no basis for granting federal

habeas corpus relief.

## C.  *Ineffective Assistance of Counsel Regarding Competency*

Petitioner contends that his trial counsel was ineffective for failing to

inform the Court that he suffered from mental issues and requesting a

competency hearing for him.  ECF No. 12.

The state court rejected this claim on postconviction review because

Petitioner's allegations of incompetency were conclusional.  Moreover,

Petitioner's counsel did have his competency evaluated prior to trial and

the psychologist who evaluated Petitioner determined that he was

competent to proceed.  ECF No. 17-3 at 365; *see* ECF No. 17-3 at 303-05

(competency assessment by Clifford A. Levin, Ph.D., addressed to

Petitioner's trial counsel, Linda Haddad).  Dr. Levin concluded that

Petitioner "is currently exhibiting a good understanding of the legal system

and evidences the capacity to fully participate in his legal representation.

Within a reasonable degree of psychological certainty he is assessed to be

**Competent to Proceed**."  *Id*.  The report is dated April 12, 2011; trial

commenced in November 2011.

Petitioner points to nothing in the record that supports his claim that

he was incompetent at the time of trial such that counsel erred by not

requesting a competency hearing.   The state court on postconviction

review concluded that because Petitioner's conclusional assertions did not

cast any legitimate doubt as to his competency, he did not show that his

counsel erred by failing to raise competency as an issue at trial.  ECF No.

17-3 at 366.  On this record, Petitioner has failed to show that the state

court's rejection of this ineffective-assistance claim on the performance

prong of *Strickland* was contrary to, or an unreasonable application of

federal law.

## V.  <u>Certificate of Appealability</u>

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VI.  Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that

the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,  ECF

No. 12, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 26th day of December 2017.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.